# Meenen *v.* Negley, Appellant.

*Equity—Jurisdiction—Decree—Res judicata—Discontinuance of suit—Failure to enter discontinuance—Certification to the law side of the court—Act of June 7, 1907, P. L. 440.*

An order certifying a cause to the law side of the court, pursuant to an opinion of the equity court that it has no jurisdiction, does not render res judicata the matter on which suit was brought. Such order is interlocutory. Even a final decree dismissing an appeal on the ground of lack of jurisdiction is not an adjudication upon the merits and will not bar a subsequent action at law on the same cause of action.

Good practice requires that when discontinuance of a suit in equity has been permitted by the court, plaintiff should pay the costs and enter a formal discontinuance before bringing an action at law.

A judgment at law after a trial on the merits will be sustained although the action was brought before entry of formal discontinuance of the equity suit, where authority for such discontinuance was previously obtained from the court, especially in view of the fact that had the action at law been abated and the suit in equity proceeded with, the court could have directed an issue to be tried by a jury.

It is a matter within the sound discretion of the court whether it shall permit an equity suit to be discontinued before final determination.

The provision in the Act of June 7, 1907, P. L. 440, that unless the defendant in an equity suit at the outset questions the jurisdiction of the court on the ground that the suit should have been brought at law, the right of trial by jury shall be deemed to have been waived by both parties and the case shall proceed to a final determination by the court, does not deprive the court of the right to allow a discontinuance of the suit in proper cases.

*Practice—Allegata and probata—Variance.*

In an action of assumpsit to recover a sum of money in the hands of defendant, the statement of claim alleged an employment

by plaintiff of defendant as attorney to secure a mortgage on real estate owned by plaintiff sufficient to pay a purchase money mortgage on the land and satisfy the plaintiff's creditors. Plaintiff testified that defendant agreed to buy the property at sheriff's sale on the mortgage and place on it as large a mortgage as he could, and out of the proceeds pay the creditors, turning over any balance to plaintiff. A letter of defendant indicated that he had both methods under consideration.

In such case there was no substantial variance on the main allegations that defendant undertook to act as attorney for plaintiff relative to the real estate and so conducted the matter of his employment as to make a personal profit for himself at the expense of his client, for which he should account to the plaintiff, and a verdict for the plaintiff will be sustained.

*Equity—Jurisdiction—Act of 1915, P. L. 483, section 11.*

Such course of action was cognizable in equity, in enforcement of the maxim "Equity regards that as done which ought to be done."

The jurisdiction of equity was not exclusive. An action of assumpsit for the profit received by the attorney, which he should have paid over to his client, will lie, under the Practice Act of 1915, section 11.

Argued April 25, 1928. Appeal No. 35, April T., 1928, by defendant from judgment of C. P., Allegheny County, No. 1799, October T., 1923, in the case of James E. Meenen v. W. G. Negley. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Action of assumpsit to recover money in the hands of an agent. Before MACFARLANE, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,011.27 and judgment thereon. Defendant appealed.

*Error assigned* was the refusal of defendant's motion for judgment non obstante veredicto.

*T. M. Gealey,* for appellant.—A final decree in equity unappealed from renders the cause of action res judicata Baker v. Hartman, 30 Lanc. 265; Nissley v.

Drace, 242 Pa. 105; Bank of Pittsburgh v. Purcell, 286 Pa. 114; Beaver v. Slane, 271 Pa. 317.

*Charles P. Lang,* for appellee.

OPINION BY KELLER, J., July 12, 1928:

This is a complicated record. Appellant states in his history of the case that "the parties have agreed upon a statement of the facts of the case under Superior Court Rule 56 and that statement is printed as part of the record in this case." No such statement is contained in the record before us. The parties only agreed, in accordance with section 5 of the Act of May 11, 1911, P. L. 279, on what testimony should be included in the printed record, as relevant to the questions involved and to be argued in this appeal.

Appellant states four questions are involved: 1. Whether a pending equity suit, which has reached a final decree, unappealed from and unexcepted to, precludes a subsequent suit at law on the same cause of action?

2. Is the cause of action in the subsequent suit at law res judicata?

3. Was there a fatal variance between the allegata and probata in the action at law?

4. Was the cause of action cognizable exclusively in equity?

We shall take them up in order, considering the first and second together.

1 and 2. As stated by the appellant these questions are hardly debatable; but a review of the record shows that they are too broadly stated. On June 21, 1919, the plaintiff filed a bill in equity against the defendant, setting up, as ground for suit, practically the same facts declared on in the present action. The defendant filed an answer on the merits, raising no objection to the jurisdiction in equity. After a hearing the court, on November 3, 1920, filed an opinion holding

that equity had no jurisdiction of the subject matter, and that plaintiff's remedy was by action at law; that if counsel for plaintiff so desired the case would be certified to the law side of the court; otherwise a decree dismissing the bill would be entered. A decree nisi was entered in accordance with said opinion, and on December 8, 1920, the cause was ordered certified to the law side of the court for a jury trial. It will be noted that the court did not dispose of the case on the merits, but held it was not cognizable in equity. If a final decree dismissing the bill had been entered pursuant to the opinion, it would not have been an adjudication on the merits and would not have barred a subsequent action at law on the same cause of action. This disposes of the contention of "res judicata." On February 15, 1921, the present appellant moved the court to revoke and rescind its order certifying the case to the law side of the court on the ground that as no question of jurisdiction had been raised pursuant to the Act of June 7, 1907, P. L. 440, the same had been waived and the court should have proceeded to a final determination of the case; and on November 23, 1921, the court rescinded the order as inadvertently made and ordered that "the case be reinstated for further hearing, if desired by the parties, and for findings of fact and conclusions of law under the first section of the Act of 1907." From this order the defendant and present appellant took an appeal to the Supreme Court (276 Pa. 5), which in a per curiam opinion held that all the above-recited orders and decrees were interlocutory and unappealable, and quashed the appeal.

On February 14, 1923, on petition of the plaintiff, (appellee here), the court granted a rule on defendant (this appellant) "to show cause why plaintiff should not be permitted to discontinue the suit in equity without prejudice to his rights at law in the premises"; and pursuant thereto the following order was made:

"And now, March 3, 1923, this matter came on to be heard on petition filed by plaintiff. After hearing, the court does hereby order and decree that the case be discontinued as prayed for." The plaintiff, apparently considered this to have effected a discontinuance, and without paying the costs incurred in the equity suit and entering a formal discontinuance therein, brought this action at law. Defendant, thereupon, in his affidavit of defense, objected to proceeding with the action at law while the suit in equity was still pending and to any removal of the cause of action from equity to law, the plaintiff having elected to proceed in equity and the defendant having consented thereto. Notwithstanding, the action proceeded to trial and resulted in a verdict for the plaintiff, whereupon the defendant by motion for judgment non obstante veredicto again raised, inter alia, the question of the pendency of the equity proceedings; and on May 7, 1926 the court made the following order in the equity suit: "It appearing that plaintiff has not discontinued and has not paid costs, it is ordered that the prothonotary shall not receive and enter a discontinuance until further order of the court." On May 21, 1926 after argument of the motions for new trial and judgment non obstante veredicto the court filed an opinion concluding: "We will not make any disposition of these motions until defendant has an opportunity to move in the equity case to vacate the order allowing a discontinuance." In January, 1927, the plaintiff presented a petition in the equity proceeding asking the court to cancel or rescind its order of May 7, 1926; and on April 11, 1927 the said order was revoked conditioned on payment of the costs by the plaintiff; and discontinuance of the equity suit was permitted on payment of costs. And on April 12, 1927 the suit in equity was discontinued after payment of costs. This was done pursuant to an opinion filed by the court in the present action, setting forth that the defendant had not

moved to vacate the order allowing the equity suit to be discontinued until after plaintiff had presented his petition to revoke the order of May 7, 1926, and had "been guilty of gross laches." The court subsequently refused the defendant's motions for new trial and for judgment non obstante veredicto and directed judgment to be entered on the verdict. During the pendency of these proceedings both the trial judge in the equity suit and the president judge, who sat with him in making the order of November 23, 1921, died.

The provision in the Act of 1907 that unless the defendant in an equity suit at the outset question the jurisdiction of the court on the ground that the suit should have been brought at law, the right of trial by jury shall be deemed to have been waived by both parties and the cause shall proceed to a final determination by the court, does not deprive the court of the right to allow a discontinuance of the suit in proper cases. The case of Beaver v. Slane, 271 Pa. 317, relied on by appellant, does not so decide. It only states the well settled rule that a litigant has no absolute right to discontinue a suit without the sanction of the court, either on common law principles or by force of any statute; not that the court has not power to permit it to be done in proper cases. It was a matter within the sound discretion of the lower court whether it should permit the equity suit to be discontinued before final determination. Good practice required that when such permission had been obtained the plaintiff should have paid the costs and entered a formal discontinuance of the equity suit before bringing the present action at law: Freeman v. Lafferty, 207 Pa. 32. Before the Practice Act of 1915, P. L. 483, the defendant raised such a defense by plea in abatement: 1 Chitty on Pleading, p. 488. That Act abolishes pleas in abatement, as such, and provides that defenses heretofore raised by these pleas shall be made in the affidavit of defense (Sec. 3). The pres-

ent practice is not very definitely marked out. It would seem proper that defenses of this character should be passed upon preliminarily by the court, where that could be done, and before a trial on the merits, by analogy to the rule in vogue under the old practice that it was too late to raise such defense by plea in bar: Findlay & Hay v. Keim, 62 Pa. 112. Certainly, where the facts involved in the ''plea in abatement'' are not in dispute, there should be some way of disposing of defenses of this character separate from and prior to the trial by jury on the merits. Had that been done here much of the complicated state of this record could have been avoided. After a trial on the merits, however, and a formal discontinuance of the equity proceedings, we are not convinced that the original error of practice requires a reversal at this stage of the proceedings. Even had the present action been abated, and the suit in equity proceeded with, the court could have directed an issue to be tried by a jury: Smith & Fleek's App., 69 Pa. 474; and where the issue has been tried by a jury and the result concurred in by the court below we are not disposed to reverse on the sole ground of error in bringing the action before a formal discontinuance of the equity suit was entered, where authority for such discontinuance had been previously obtained from the court. Under the circumstances no court would have permitted the plaintiff to revive the equity proceedings had the present action gone against him. We do not regard it as error requiring a reversal of the judgment that the court subsequently permitted the plaintiff to do what he should have done following the court's order of March 3, 1923, viz, pay the costs and enter the discontinuance which he had prayed the court for permission to enter; especially where the defendant neglected for over nine months to move for a vacation of the order allowing a discontinuance,

after being afforded an opportunity by the court of doing so.

3. At first view it would seem that there was a substantial variance between the allegata and probata. The statement alleged an employment by the plaintiff of the defendant, as an attorney-at-law, to secure a mortgage on real estate owned by plaintiff sufficient to pay a purchase money mortgage on the land and satisfy the claims of the contractor, sub-contractor and material men, who had erected the building thereon or furnished materials for its construction; while the arrangement, as testified to by the plaintiff on the trial, was that the defendant had agreed to buy the property in at a sheriff's sale on the mortgage and place on it as large a mortgage as he could, and out of the proceeds pay the creditors, turning over any balance remaining to his client, the plaintiff. From a letter of the defendant, introduced into evidence by him and referred to by the trial judge in his charge, it seems that he was considering both methods of assisting the plaintiff and was planning to buy the property in at the sheriff's sale if he could not satisfy the creditors out of the funds received from a mortgage on the premises for $3,600, which he had arranged to place. In any event, on further consideration, the variance is more apparent than real, for the averment above referred to is only by way of inducement; the main allegations in the statement being that the defendant undertook to act as attorney-at-law for the plaintiff relative to the real estate above referred to and so conducted the matter of his employment as to make a personal profit for himself out of it at the expense of his client, which profit he should account for and pay to the plaintiff. The claim in suit is not based on the alleged neglect of the defendant to secure a mortgage. It is that defendant was employed as attorney for the plaintiff relative to certain real estate and that when he secured control

of the real estate by virtue of a sheriff's sale, and conveyed it, or directed it to be conveyed, to another, any profit derived from the transaction belonged to his client. On this main averment of the statement it is not alleged that there was any substantial variance between the pleadings and the proof. Appellant has not in his statement of questions involved raised any question as to the sufficiency of the evidence. He has not printed all the evidence taken on the trial, nor included in the printed record any of the exhibits offered in evidence, which were of importance to the jury in passing on the issues of fact; hence we must assume for the purpose of this appeal that there was sufficient evidence to support the verdict on the main issue, as stated above, submitted to them.

4. We think the suit was cognizable in equity, in enforcement of the maxim, "Equity regards that as done which ought to be done." See 21 Corpus Juris 200, 201. But we are of opinion that the jurisdiction of equity was not exclusive and that in this State an action at law in assumpsit would lie for the profit received by the attorney which he should have paid over to his client; especially since the Practice Act of 1915, P. L. 483, Sec. 11.

The assignments of error are overruled and the judgment is affirmed.