## Orient Building & Loan Association, Appellant, *v.* Freud.

432

Argued November 27, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Rule to open judgment. Before FINLETTER, P. J., McCULLEN and BROWN, JJ.

*Harvey Gourley,* for appellant.—The case should be disposed of on petition and answer alone: State Camp v. Kelley, 267 Pa. 49; Bauer v. Hill, 267 Pa. 559.

The reservation in the deed protects plaintiff association in its right to hold defendant liable under the judgment entered: Dollar v. Burns, 87 Pa. 491, 496; Stanhope's Est., 184 Pa. 414.

The deed cannot be construed as a legal satisfaction of the mortgage: Moore's App., 88 Pa. 450; Merriman v. Moore, 90 Pa. 78; Taylor v. Mayer, 93 Pa. 42.

*Nathaniel I. S. Goldman,* for appellee.—It is undisputed that plaintiff-mortgagee is now the legal and real owner in fee of the real estate secured by its mortgage, which accompanied defendant's bond in question. Its title is subject to the mortgage which accompanied the bond upon which it is now attempting to collect from defendant. It is also subject to a subsequent mortgage of $500 created by plaintiff's grantor: Bryar's App., 111 Pa. 81; Carpenter v. Koons, 20 Pa. 222; Cock v. Bailey, 146 Pa. 328; Dollar Savings Bank v. Burns, 87 Pa. 491; Greensburg Fuel Co. v. Irwin Natural Gas Co., 162 Pa. 78; Stanhope's Est., 184 Pa. 414; Mollenauer v. Smith, 51 Pa. Superior Ct. 517.

OPINION BY MR. JUSTICE SIMPSON, January 6, 1930:

On December 13, 1923, defendant borrowed $2,800 from the building and loan association plaintiff, and gave to it therefor a bond for that amount, with warrant of attorney attached, and, as collateral to the loan, executed and delivered to defendant a building association mortgage, for a like amount, secured on one of defendant's properties, and also transferred to it fourteen shares of its building association stock. On May 1, 1924, defendant conveyed the property to Florence Schwartz, who on March 17, 1925, conveyed it to Charles Lindenhofen and Louisa, his wife, and they, in turn, conveyed it to plaintiff on December 31, 1928, since

which last named date plaintiff has been the absolute owner of the property, the mortgage on it, and also the bond, warrant of attorney and fourteen shares of stock. Each of the realty conveyances was made subject to the building association mortgage, the one to plaintiff reciting also "it is understood that the said mortgage debt of $2,800 shall not be affected by this conveyance nor merged with the title hereby granted." It is doubtful, though not necessary to decide at this stage of the case, whether the words "mortgage debt" means anything more than the mortgage, since a mere debt could not, under any circumstances, be merged in the fee to realty. If this is their meaning, then their only effect is to keep the mortgage alive, not the debt secured by the bond and warrant, and plaintiff's right to recover would be limited to the mortgaged premises, which possibly would result equitably to all concerned.

On January 18, 1929, plaintiff, by virtue of the warrant of attorney, entered a judgment against defendant on the bond, and assessed the damages at $3,181.52, which was made up of the full amount of the mortgage, seven months interest thereon, an attorney's commission for collection and seven months alleged arrearages of dues, premiums and fines on the fourteen shares of stock. Defendant took a rule to open the judgment, which, after a hearing of both parties, was made absolute, because, as stated by the court, it had not been given sufficient information to enable it to determine whether or not defendant was personally liable to plaintiff, and, if he was, in what amount. This appeal by plaintiff was then taken, and, in considering it, we are called upon to determine only whether or not the court below abused its discretion in opening the judgment: Kelber v. Pittsburgh National Plow Co., 146 Pa. 485; Walter v. Fees, 155 Pa. 55; Warren Savings Bank & Trust Co. v. Foley, 294 Pa. 176. We have nothing before us to enable us to decide that it did.

The point upon which the court below needed and was not given information, was as to whether or not the amount due on the mortgage was part of the consideration of the respective purchases. Presumptively it was: Stanhope's Estate, 184 Pa. 414; Dobkin v. Landsberg, 273 Pa. 174, 180; Bryar's Appeal, 111 Pa. 81, 90; Cock v. Bailey, 146 Pa. 328. If it was, then, if plaintiff recovers from defendant, the latter may recover from his vendee, who in turn may recover from her vendees, and they from plaintiff, as their vendee, thus, by circuity, plaintiff being compelled to finally pay back any sum it recovers from defendant, together with the accrued costs in the various suits. In order to avoid this circuity, the court may treat as done that which should be done. We are not furnished with any more information than the court below had, and hence we might well affirm on this ground alone; premising, however, that the Act of June 12, 1878, P. L. 205, which limits the effect of the words "under and subject" when appearing in conveyances, does not affect a vendor's right of indemnity against his vendee, if obliged to pay an encumbrance which formed part of the purchase price, but only operates to prevent the owner of the encumbrance from recovering against the vendee because those words appear in the conveyance to the latter: May's Estate, 218 Pa. 64; Farmer's Loan & Trust Co., v. Penn Plate Glass Co., 186 U. S. 434.

Moreover, even if the foregoing point is ultimately decided in favor of appellant, it has other difficulties to face. It has not printed for our use the bond, warrant of attorney or mortgage. We must assume therefore, that all these documents are in the usual building association form, and hence would show that defendant owned and, in consideration of the loan, had transferred to plaintiff fourteen shares of its building association stock, upon each of which one dollar per month was to be paid, in addition to accruing interest, premiums and fines; that these payments were to continue until the

fourteen shares of stock became worth $200 each, when they would be declared matured, the bond and warrant of attorney cancelled and the mortgage satisfied; and, in the meantime, no default could be declared and execution issued unless there was at least six months arrearages of dues, interest, premiums or fines. If the documents are thus worded, then at the time plaintiff entered judgment there had been actually paid on the stock, at least $14 per month for sixty-one months, and presumptively also the interest, premiums and fines which accrued during that period. If the stock was subscribed for before the mortgage was created the payments would be proportionately increased, and, upon whatever amount the principal was, certain profits probably were earned. It is true that, in the ordinary situation, where a building association owns outright only the bond, warrant of attorney and mortgage, the dues paid on the stock are not ipso facto credits on the loan (Economy Building Assn. v. Hungerbuehler, 93 Pa. 258; Hamilton Trust Co. v. Hoskins, 244 Pa. 1); but even then the borrower has the right, if the association is solvent, to require them to be so credited (Early & Lane's Appeal, 89 Pa. 411; Kurtz v. Campbell, 218 Pa. 524), in which event their "payment......is an indirect payment on account of the loan" (Freemansburg Building & Loan Assn. v. Watts, 199 Pa. 221, 229); and, if the dues are thus applied, whether by direction of the borrower or of the association itself, creditors of the former cannot thereafter acquire any adverse interest in them by attachment or otherwise: Economy Building Assn. v. Hungerbuehler, supra; Egolf Building & Loan Assn. v. Cleaver, 228 Pa. 60.

The present case is far from being in the usual situation, however. Plaintiff is not only the owner of the bond, warrant of attorney and mortgage, with the shares of stock as collateral to the loan, but is the owner of the property also, with a right to collect the income therefrom and to receive any profit made on its resale, and

a corresponding duty to pay or credit each month the dues, interest, premiums and fines. This duty will continue so long as it owns the property, whether the title is in its own name or in that of some one else, and is not altered by the provision that "the said mortgage debt of $2,800 shall not be affected by this conveyance [the one to it] nor merged with the title hereby granted." Each such payment, if made or credited, would increase the value of the shares and should pro tanto reduce the personal debt of defendant and the amount due on the mortgage. Plaintiff thus being both payor and payee is required to do equity to all others interested, including defendant, and, if no other rights have intervened, the least that it can do, even if it is not estopped by its purchase of the property, is to give to defendant full credit for the value of the stock.

It must be remembered also that plaintiff's duty to pay or credit the dues, etc., continued after as well as before the date of its judgment, and will continue after any final judgment in its favor, if it gets one. Under such circumstances, if plaintiff is entitled to recover at all, it is difficult to see (unless the parties agree to a receiver to collect and distribute the income of the property), how justice can be done as between them, except by a proceeding in equity and the appointment of a receiver by the court, though possibly sections 11, 14 and 19 of the Practice Act of 1915, P. L. 483, may be utilized for the purpose: see Miller v. Belmont Packing & Rubber Co., 268 Pa. 51, 64; Duggan v. Duggan, 291 Pa. 556, 560, and Meenan v. Negley, 93 Pa. Superior Ct. 591, 599. It is easy to see, however, that, because of the situation which exists, plaintiff's summary judgment for the full amount of the bond with interest, etc., cannot possibly be sustained.

We should perhaps add, also, though the question was not argued on this appeal and hence is not decided, that it is at least doubtful whether the arrearages of dues, interest, premiums and fines were not, in legal effect,

paid when plaintiff became the owner of the property, inasmuch as the duty then devolved on it to pay those arrearages as well as to keep up all later payments. If they were in effect thus paid, then the judgment was improvidently entered, for, on the assumption that the bond and mortgage were in the usual form, there were not six months' arrearages, as is usually required before a default can be declared and execution proceedings had.

The order of the court below is affirmed.