## Wheatland Tube Company *v.* McDowell & Company, Appellant.

Argued September 27, 1934.  Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Louis J. Wiesen,* with him *Emrys G. Francis,* for appellant.

*A. S. Ashbridge, Jr.,* with him *John B. Conly,* for appellee.

OPINION BY MR. JUSTICE KEPHART, November 26, 1934:

This appeal is from an order making absolute a rule for judgment for want of sufficient affidavit of defense in an action of assumpsit for goods sold and delivered. Plaintiff is termed Wheatland, and defendant McDowell; both are corporations. The affidavit does not deny the correctness of the account, but sets up as a defense an agreement between the plaintiff and B. A. Small, who was at one time general manager of Wheatland. The consideration for the cancellation of Small's contract of employment with Wheatland was, inter alia, "the sum of Twenty-seven Thousand, Five Hundred ($27,500) Dollars, payable in steel pipe . . . at the rate of Fifty ($50.00) Dollars a ton," to be shipped in given tonnages per month from December, 1932, to March, 1933. Wheatland was notified by Small and McDowell to "credit to the account of the defendant (McDowell) the sum of Ten Thousand ($10,000) Dollars, and thereby reduce the amount of pipe due from plaintiff to . . . Small by Two Hundred (200) tons, according to the terms of the agreement." In a supplemental affidavit it is averred that "it was the express oral . . . contemporaneous and inducing agreement between Wheatland . . . and Small that the indebtedness of McDowell . . . to Wheatland . . . in the amount of $10,000 would be offset by reduction of the amount of pipe to be delivered to . . . Small . . . by Two Hundred (200) tons." It was averred that Small subsequently sold his cancellation contract to the Sharon Steel Company, and that concern with McDowell was acquired by the Mercer Tube & Manufacturing Company. An official of the Sharon Company, owner of the Small contract, "duly authorized so to do," directed Wheatland to "charge the accounts and rights of B. A. Small under the contract with Wheatland . . . in the amount of Ten Thousand ($10,000) Dollars," and credit the account of McDowell on Wheatland's books with like amount. It was further averred that the treasurer of the Sharon Company, owner of the Small contract, in a conversation

with the assistant to Wheatland's president and treasurer, arranged to extinguish $10,000 of the debt then owing by McDowell to Wheatland by a reduction of 200 tons in the amount of pipe to be delivered. This was on December 1, 1932.

So much of Small's cancellation agreement, dated October 10, 1932, as is material to the case before us reads: "It is also agreed that . . . Small hereby guarantees that of the amount now owing by McDowell and Company [appellant] . . . which approximately amounts to Twenty Thousand ($20,000) Dollars, the sum of Ten Thousand ($10,000) Dollars will be paid to the Wheatland Tube Company [appellee] either in cash or by set-off by goods sold and delivered by [appellant] . . . to [appellee] . . . prior to the delivery of the last Two Hundred (200) tons of pipe hereinbefore referred to."

The United States Collector of Internal Revenue, on December 10, 1932, filed a lien against Small for income taxes in an amount exceeding $600,000, and seized the steel pipe in Wheatland's possession. The notice was served on Wheatland, December 13th; the Sharon Company set up as defense to the federal action that it was the owner of the pipe through an assignment from Small. They there stated that Wheatland refused to credit McDowell's account with this sum. The District Court of the United States decided that there never was any assignment to the Sharon Company; this decision was sustained by the Circuit Court of Appeals. The distraint on the pipe under the tax lien was upheld. We might regard the findings there as binding in all matters now before us, but because of the nature of the defense we will consider the case as presented; unless it appears in the affidavit that Wheatland actually accepted the arranged credit by agreeing to cancel its obligation to ship 200 tons of pipe, the action of the court below in sustaining the motion for judgment is sound.

The agreement between Small and Wheatland fixed the amount of McDowell's indebtedness at approximately

$20,000. Of this amount, Small guaranteed payment of $10,000, either in cash or by "set-off by goods sold and delivered" by McDowell to Wheatland, which must have been done before the last 200 tons of pipe were delivered to Small. Wheatland sues for $10,217.70 of this indebtedness. It is apparent from the pleadings that Small is no longer liable on his guarantee. It was subject to McDowell's default in paying, in cash or goods to the amount of $10,000, an indebtedness of $20,000; this payment was made, as appellee sues only for $10,217.70. The $217.70 has been paid according to appellant's statement. Furthermore, the guarantee was limited to cash or goods to be sold Wheatland by McDowell which was to be credited to the latter's account.

McDowell, however, insists that the oral understandings required Wheatland to credit against its remaining indebtedness of $10,000 the 200 tons of pipe at $50 a ton which Wheatland was required to ship to Small. This is in direct violation of the covenant in the written agreement. It is not cash or goods sold by McDowell, but is pipe in Wheatland's possession, which the parties to the agreement valued at $50 a ton, and which, no doubt, included Wheatland's profit in that pipe. This credit claimed by McDowell would be rather curious, to say the least, but if that was the parties' understanding, it must be enforced. As we find that the guarantee contract was ended, the matter as to the 200 tons of pipe credit resolves itself into this proposition: Wheatland is a creditor of McDowell; Wheatland, at the same time, is a debtor obligated to Small for future shipments and delivery of a certain tonnage of pipe already paid for at $50 a ton. Small and McDowell have no contractual relation as debtor and creditor and while they may be jointly interested in the venture in which McDowell is engaged, Small has no connection with the indebtedness due from McDowell to Wheatland. As to it Small may be regarded as a stranger. What McDowell is undertaking to do is to work a novation whereby McDowell was to

be released of its debt, and Small, a third party, was to be substituted as debtor and the debt satisfied by having Wheatland charge his, Small's, account with 200 tons of pipe and credit McDowell with the pipe's value or $10,000.

To establish a novation the pleader should state facts covering all the elements of novation, or facts from which they may be inferred. The affidavit of defense does not measure up to this requirement. Among the essentials of a valid novation is the agreement of all parties to the new contract extinguishing the old debt, and substituting a new one. If this or any essential is lacking there can be no novation. A creditor is not obliged, nor may he be compelled, to accept the obligation of a third party in place of that of his original debtor, simply because the debtor notifies him so to do. This is true even though the creditor is indebted to the third party. McDowell could have taken an assignment of Small's claim, but that was not done; in fact, Sharon Company's answer in the federal proceeding stood in the way. What appellant is endeavoring to do is to extinguish its obligation by forcing its creditor, Wheatland, to agree to a cancellation of an obligation due by it to a third party. Notwithstanding the fact that the obligation of the creditor to the third party is different in kind and character from debtor McDowell's obligation to it, the parties may, by agreement, so engage, but such engagement must be averred as a fact. There is no such averment, as shall be shown later. Moreover, the acceptance of a new security for an existing debt does not operate as a payment thereof unless it was intended by the parties to extinguish the old debt and substitute the new undertaking for it; otherwise, the old debt remains and the new obligation is merely collateral: McCartney v. Kipp, 171 Pa. 644. These factors are not as clear and definite in the affidavit as they might be. Novation generally cannot be effected unless supported by sufficient legal consideration: Edwards v. Heralds of Liberty, 263 Pa. 548, 554. Though

the promise or agreement of the parties to substitute may be averred as such, it was not done here.

The affidavit relies chiefly on a contemporaneous agreement to show a common understanding between Wheatland and Small, to which McDowell was not a party. If it falls through insufficient averments, appellant's case likewise falls. As stated the affidavit does not show that Wheatland accepted Small's credit against it as a substitute for appellant's indebtedness. Letters directing this to be done are not, by themselves, sufficient to establish a novation or any relation between the creditor and a third party. Considering the allegations as to the oral contemporaneous agreement to show acceptance of the novation as to the indebtedness of McDowell, they contradict the terms of the contract. The affidavit does not state that the officer who was supposed to have made it had any authority whatever to make such an arrangement. The officer's title shows that his position normally would not carry such power, and there is not the slightest indication that he was authorized in any way to deal with this claim or any fiscal affair of the company, or to make such a compromise. He was an assistant to the president, and while his acts are valid within their scope, ordinarily the collection of accounts or the making of contracts providing for the extinguishment of debts would be the duty of the president, treasurer or some executive officer: Baker v. R. R. Co., 95 Pa. 211; Ardesco Oil Co. v. Richardson, 63 Pa. 162. Certainly it cannot be presumed that the assistant to the president should have such power. The affidavit is utterly insufficient on which to predicate an acceptance or a novation.

The court below was entirely right when it found that the affidavit presented no defense whatever to the claim of $10,000 for which judgment was allowed.

Judgment affirmed.