## Magazine Digest Publishing Company *v.* Shade et al., Appellants.

488

Argued April 19, 1938. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*James L. Baxter,* for appellants.

*Clarence E. Blackburn,* for appellee.

OPINION BY MR. JUSTICE DREW, May 9, 1938:

This suit in assumpsit was brought to recover money alleged to be due under a contract between plaintiff and Mutual Magazine Distributors, Inc., on which contract defendants were guarantors. In their affidavit of defense defendants denied liability on the ground that they were discharged by a subsequent oral agreement which altered the original contract without their knowledge or consent. The court below, trying the case without a jury, found against this defense and entered judgment for plaintiff. This appeal followed.

Under its original contract Mutual Distributors agreed to buy plaintiff's magazines at fourteen and one-half cents a copy for resale to retailers at sixteen and one-half cents. Defendants guaranteed Mutual's obligation to pay plaintiff, with the additional stipulation that "the publisher [plaintiff] may in his absolute discretion and without diminishing the liability of the guarantor [defendant], grant time or other indulgence to the distributor [Mutual Distributors] and may accept or make any compositions or arrangements when and in such manner as the publisher may think expedient." The parties continued under this contract until September 19, 1933, when Mutual was in arrears to the extent of $1,162.12. On that date it was orally agreed between plaintiff's president and the president of Mutual that if plaintiff refrained from terminating the contract Mutual would thereafter pay the increased price of fifteen cents a copy for the magazines. Defendants were not informed and had no knowledge of this new contract. It remained operative for seven months

when, for reason that Mutual was again far behind in its payments, and had not paid what remained due under the original contract, plaintiff refused to go on and later brought this action to recover from defendants all that Mutual owed under the original and substituted agreements, computing everything, however, at the fourteen and one-half cent rate. The court below allowed recovery of the entire claim.

We cannot agree that defendants are liable for Mutual's debts under the substituted agreement of September 19, 1933. Even compensated guarantors—and defendants are not shown to be such—are not liable when the original contract on which their undertaking was made is materially changed without their assent: *Sall B. & L. Assn. v. Heller,* 314 Pa. 237. A gratuitous or accommodation guarantor is discharged by any change, material or not, and "even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further": *Bensinger v. Wren,* 100 Pa. 500, 505. But there can be no doubt the alteration here was material. To the distributor it meant 25 per cent less in its sale profit, to plaintiff it made the difference between terminating and continuing contractual relations with the distributor, and to the defendants it meant an increase in their obligation of $1,118.05 on 223,609 magazines received from the publisher after the new contract was in force. Decreasing gross profits to such an extent and increasing the guarantors' liability in such an amount over a seven-months' period is certainly an alteration of risk which may not be classed as an "indulgence," "composition," or "arrangement" within the contemplation of the parties. The guarantors were at least entitled to notice of change and the attempt to increase their burden and their chances of loss. Mr. Justice STEWART, in *Young v. American Bonding Co.,* 228 Pa. 373, 380, has stated: "It is not a question whether the variance actually caused the breach of the bond; but whether it

was such a variance as a reasonably careful and prudent person undertaking the risk would have regarded as substantially increasing the chances of loss." Nor can the legal effect of alteration be escaped by limiting recovery against the guarantors to the rate set in the original contract. The very theory of this defense is that after the change there is a new contract on which the guarantor has not agreed to be liable to any extent: *Sall B. & L. Assn. v. Heller,* supra.

The defense is not precluded, as plaintiff contends, by the terms of the guaranty quoted above. It is provided that plaintiff should not lose its rights against the guarantors by granting time or making "compositions or arrangements" with the principal debtor. A composition is a compromise for settlement of debts already incurred: *Crawford v. Krueger,* 201 Pa. 348. Here an entirely new working contract was made for the future. Plainly, it is not a composition. It makes no difference, moreover, that the guarantee reads "compositions or arrangements." "Arrangements" is an extremely general term, but it is obvious, as used here, it means only settlements of existing debts kindred to but not technically compositions. There can be no doubt that what was meant, without diminishing the liability of the guarantor, was that the real parties to the contract were permitted to make any reasonable arrangement or settlement between themselves of their financial affairs, which resulted from the making of the contract. Furthermore, since defendants were not professional guarantors, the rule of strict construction cannot be invoked against them: cf. *Hess v. Merion Title & Trust Co.,* 317 Pa. 501.

The privilege "to grant time or other indulgence" in connection with the periodic payments of the price can have only one reasonable meaning, that is, to extend the time for payment or grant other favors to the distributor with regard to the terms and manner of accounting for the amounts coming due under the contract. The

right to "accept or make any composition or arrangement" with regard to those payments is not by any logical reasoning equivalent to an authorization to change the basic consideration, but it is rather an authorization to compromise or compose any disputed amounts that may be claimed under the contract, and also an approval of any arrangement deemed expedient by the publisher to settle such issues.

Plaintiff strongly urges that the substituted agreement was invalid and should not, therefore, discharge defendants. This claim is based on the fact that the agreement was made by the presidents of the corporate parties and not by their boards of directors, and that it was merely parol. After acting on the agreement for seven months, accepting from Mutual large payments at the fifteen cent rate, plaintiff cannot now be heard to question the authority of its president to make it: *Hartzell v. Ebbvale Mining Co.*, 239 Pa. 602. At any rate, the agreement was in the usual line of business in which both corporations were engaged; presumably their presidents had power to enter into it (see *Wheatland Tube Co. v. McDowell & Co.*, 317 Pa. 295, 301), and nothing whatever, neither by-law nor charter provision, is shown to indicate that their powers were more limited. Indeed, for all that appears the original contract, introduced as an exhibit, was executed by the same officers without the action of directors. Plaintiff cannot rely upon the one contract and disaffirm the other subsequently made in the same way. It does not matter that the new agreement was proved by parol. "It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. And this may be shown by parol by showing either an express agreement or actions necessarily involving the alterations": *Achenbach v. Stoddard*, 253 Pa. 338, 343.

Defendants are not, however, relieved from liability for Mutual's debts which accrued while the original

contract remained in force. The subsequent variation of that contract had no effect upon the liability that had already become fixed. Consequently, defendants were not discharged as to it: *United States v. U. S. Fidelity & Guaranty Co.*, 236 U. S. 512; *Duffy v. Buena Vista Ice Co.*, 122 Md. 275, 90 Atl. 53; *Bothfeld v. Gordon*, 190 Mass. 567, 77 N. E. 639; 4 Williston on Contracts (Rev. Ed.), sec. 1240. The court below found the amount still due under the original contract to be $1,162.12. Plaintiff is entitled to judgment in that amount with interest from the time the debt accrued. We have power to enter such judgment without remand: *Tauber v. Wilkinsburg*, 309 Pa. 331.

Judgment reduced to $1,162.12 with interest, and, as modified, affirmed.